IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KENNETH OMAR SAUNDERS, ET-0982,      )
     Petitioner,                                      )
                                       )
              v.                                          )      Civil Action No. 07-45
                                       )
JAMES L. GRACE, et al.,                        )
     Respondents.                                 )

Report and Recommendation

I. Recommendation:

It is respectfully recommended that the petition of Kenneth Omar Saunders for a writ of habeas corpus be dismissed and that a certificate of appealability be denied for lack of a viable federal constitutional claim.

II. Report:

Kenneth Omar Saunders, an inmate at the State Correctional Institution at Huntingdon has presented a petition for a writ of habeas corpus.  In an Order entered on February 14, 2007, the respondent and the District Attorney of Allegheny County, Pennsylvania, were directed to answer and show cause, if any, why the relief sought should not be granted.

Saunders is presently serving a twenty to forty year sentence imposed upon his plea of guilty to charges of third degree murder at No. CC 200102478 in the Court of Common Pleas of Allegheny County. This sentence was entered on July 23, 2001 and no appeal was taken.[1]

---

[1] See: Petition at §§ 1-9.

1

On March 27, 2002, Saunders filed a petition for post-conviction relief, and on May 4, 2005, his appellate rights were reinstated and his motion to withdraw his guilty plea was denied.[2]

An appeal was taken to the Superior Court in which the issues presented were:

The trial court erred when it denied the appellant's motion to withdraw his guilty plea:

I. While entering his guilty plea, the Appellant was under the influence of medication that affected his comprehension skills.

II. The Appellant did not fully understand the nature of the charge he pleaded guilty to.

III. The Appellant did not understand one of the essential elements to the charge against him.

IV. The trial court failed to articulate to the Appellant his right to a jury trial.[3]

On March 27, 2006, the Superior Court affirmed the judgment of sentence.[4] A timely petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which the issue presented was:

Whether the Superior Court erred when it affirmed the trial court's dismissal of petitioner's Post Conviction Relief Act Petition/post-sentence motion to withdraw his guilty plea.[5]

On October 12, 2006, the petition for allowance of appeal was denied.[6]

The instant petition was executed on January 9, 2007, and filed timely with this Court. In

---

[2] See: Petition at §11(a)(7) and Exhibit 10 to the answer.

[3] See: Exhibit15 to the answer.

[4] See: Exhibit 17 to the answer.

[5] See: Exhibit 19 to the answer.

[6] See: Exhibit 20 to the answer.

his petition, Saunders raises the following grounds for relief:

> 1. Ineffective assistance of counsel for failing to proceed to trial on petitioner's self defense claim.
>
> 2. Unlawfully induced to enter his guilty plea.
>
> 3. Petitioner acted in self defense.
>
> 4. Illegal search and seizure conducted.
>
> 5. Violation of due process in not providing the petitioner with adequate time to prepare for trial.

It is provided in 28 U.S.C. §2254(b) that:

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage

3

of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

> The Court in Williams v. Taylor held that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, further held that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." The Court in Williams v. Taylor made it clear that the "contrary to" and "unreasonable application"clauses have independent meaning.

In the instant case, it is apparent that the only issue which the petitioner seeks to raise here which has been raised in the appellate courts of the Commonwealth, is the challenge to the

4

voluntary nature of his guilty plea. The other claims, ineffective assistance of counsel, self

defense, illegal search and seizure and lack of adequate time to prepare for trial have not been

presented to those courts. In <u>Coleman v.Thompson</u>, 501 U.S. 722,750 (1991), the Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas
> review of the claims is barred unless the prisoner can demonstrate cause for the
> default and actual prejudice as a result of the alleged violation of federal law, or
> demonstrate that failure to consider the claim will result in a fundamental
> miscarriage of justice.

No good cause existing for failing to present  those claims to the Commonwealth courts

and it appearing that as a result a procedural default has occurred, those claims need not be

considered here.

Thus, the only viable claim for consideration is whether or not the petitioner's plea was

entered into knowingly, voluntarily and intelligently. <u>Meyers v. Gillis</u>, 93 F.3d 1147 (3d

Cir.1998). Accordingly, we review the relevant record relating to the entry of Saunders' plea.

The factual background to this conviction is set forth in the March 27, 2006

Memorandum of the Superior Court:

> In the early morning hours of February 10, 2001, Appellant accepted a ride with
> Brian Patterson after leaving an after hours club called "Jaxx," located in the city
> of Pittsburgh. Appellant had never met Patterson until that evening when they met
> at Jaxx after being introduced by a mutual fried. Although the record is somewhat
> sparse on the details that led to the shooting death of Patterson, Appellant has
> acknowledged shooting Patterson in the vehicle before Appellant jumped out of
> the still moving vehicle. Appellant reportedly fired two shots while situated in the
> vehicle, one of which struck Patterson in the head and led to Patterson's death.
>
> Appellant was arrested on February 12, 2001 and subsequently charged with
> criminal homicide. Appellant was scheduled for trial on July 23, 2001, but when
> the case was called for trial the parties indicated that a plea agreement had been
> reached. Pursuant to a negotiated plea agreement, after a colloquy, Appellant
> entered a plea of guilty to third degree murder with a sentence set at the statutory

maximum of 20 to 40 years' imprisonment. At the request of the parties, sentence was imposed immediately after the court accepted Appellant's plea.[7]

On July 23, 2001, the petitioner completed a guilty plea explanation of rights form[8]. In that form, the petitioner acknowledged that he had discussed the charges with his attorney as well as the factual bases for those charges; that he understood that he has the right to trial by jury and his participation in jury selection; that to be convicted, the jury would have to be unanimous in its decision; that he would enjoy a presumption of innocence and that his guilt would have to be proven 'beyond a reasonable doubt"; that at a trial he would have the right to testify or to remain silent and that no implication could be drawn from his silence; that by pleading guilty he would be waiving all those rights; that by pleading guilty he would only preserve very limited appeal rights; that nobody had coerced him into entering the plea; that no threats had been directed at him and that the plea was freely entered into; that he has adequate time to consult with counsel and was satisfied with his representation; that he was taking medication for depression but that no impediment existed affecting the voluntary nature of his plea, and that he understood that by pleading guilty he was admitting that the had committed the charge offense.[9]

In addition, on that same date a hearing was conducted in open court. At the plea hearing held on July 23, 2001 the petitioner testified that he was taking medication for depression (7/23/01, p.3); the petitioner's counsel stated that he believed the petitioner was competent to enter a plea (7/23/01, pp.5,13); the plea agreement was explained to the petitioner and he

---

[7] See: Exhibit 17 to the answer at pp.1-2.

[8] See: Exhibit 6 to the answer.

[9] Id.

6

concurred in the agreement (7/23/01, p6); the petitioner's rights were summarized (7/23/01, p.9); the petitioner admitted committing the homicide (7/23/01, pp.14,16); it was explained that the petitioner had elected the third degree murder plea rather than risk a conviction on a higher degree of homicide (7/23/01, p.17); the plea was accepted and pursuant to the petitioner's desire sentence was imposed immediately ( 7/23/01, p. 18) and the petitioner was advised of his appellate rights (7/23/01, p.24).

At the post-conviction hearing which commenced on February 25, 2005, the petitioner testified that he had informed counsel that he was acting in self-defense (2/25/05, p.6) that at the time of the plea he was on medication and unfocused (2/25/05, pp.8-9,10); that he was unhappy with the twenty to forty year sentence but accepted it when counsel advised that if he did not accept the agreement he might receive a life sentence (2/25/05, pp. 8, 13, 14); that at the plea hearing he acknowledged committing the offense (2/25/05, pp.16, 19); and that he wanted to appeal the length of the sentence (2/25/05, p.12).

At that hearing the petitioner's sister testified that she made several unsuccessful attempts to contact defense counsel and personally informed her that the petitioner desired to file an appeal (2/25/05, p.22-23).

At the continued post-conviction hearing held on March 3, 2005, counsel stipulated that defense counsel knew that the petitioner desired to file an appeal but failed to do so as a result of a clerical error (3/3/05, p.2-3).[10] In addition, defense counsel testified that although he was unhappy with the twenty to forty year sentence which was part of the plea bargain, the petitioner

---

[10] This was apparently the basis for the trial court's reinstatement of the petitioner's appellate rights.

agreed to accept it rather than risk a more serious conviction (3/3/05, pp.4-6); that she had considered the petitioner's defenses and would have proceeded to trial if the petitioner had rejected the plea agreement (3/3/05, pp.6,8); that she reviewed the plea colloquy with the petitioner, explained the different degrees of murder and the applicable penalties and that although unhappy with the length of sentence the petitioner accepted it (3/3/05, pp.8-10).

Thus, the record reviews that the petitioner knowingly and voluntarily entered into the plea agreement with the assistance of counsel, and that he was motivated to do so by fear of being convicted of a more serious offense. For this reason, there is no basis for granting relief here.

Accordingly, it is recommended that the petition of Kenneth Omar Saunders for a writ of habeas corpus be dismissed and that a certificate of appealability be denied for lack of a viable federal constitutional claim.

Within thirteen (13) days after being served, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/Robert C. Mitchell,
Entered: April 19, 2007                     United States Magistrate Judge